The next case is United States v. Williams. Good morning. May it please the court, my name is Daryl Fields and I represent appellant Andy Williams. In this case, after completing an inventory search, the police officers took the items they found into the precinct and began processing the arrest and fingerprinting Mr. Williams. During that process, Mr. Williams asked to make a phone call. Detective Latore overheard his phone call and something about it arouses his suspicions. He spoke to his partner and he spoke to other officers and then he and his partner, Detective Fichter, went back downstairs to do a second search. That second search was done without a warrant and it was to investigate these officers'  investigations. That second search was an illegal search in violation of the Fourth Amendment. To characterize that second search as an inventory search is to undermine the Fourth Amendment. Inventory searches are exempt from the Fourth Amendment's requirement of probable cause or a warrant and or a warrant precisely because they're not done for the purpose of investigations. They're supposed to be done in the ordinary, routine course of the police safeguarding people's property and values to avoid being accused of misplacing the property and to safeguard the property. So is it enough to make out a Fourth Amendment claim to conclude that the officer may have had some motive, maybe it was entirely the motive, maybe it was partly the motive to investigate when they went back for the second look at the car? Second search was solely for the purpose of investigation. That is the Fourth Amendment violation. It wasn't as if in the middle of the first search they developed some sort of suspicion why they were looking around and they might have had a mixed motive. The second search was solely to investigate their suspicions. The district court found that Detective Latorre's testimony that he thought a second search would be prudent because he might have overlooked something of value. The district court found that credible testimony. Would we have to find that credibility determination erroneous to adopt your view? No, that's a factual determination about what Detective Latorre said. What the district court does is he interprets that as a legal, on a legal basis, as justifying an inventory search, but what Latorre testifies about is that he testifies about the first inventory search and then they go back, not because they forgot to search some area. It's not as if they, oh I forgot to look in the backseat, I forgot to look under the hood or I forgot to look under the trunk, because they looked in all those places. He went back because he had a suspicion that there was some contraband and he spoke to Detective Fichter and he spoke to other members of his gang squad and then they went downstairs and while they were searching, they called Detective Breton over to help. What the magistrate judge and district judge seemed to turn everything on is that Detective Fichter is just the agent of the two detectives who were going back to do a second search. That shouldn't make a difference, right? That shouldn't make a difference, right? I'm agreeing with you, I think, that Officer Breton, if he is acting as an agent of the other officers and they are conducting a search for the purpose of finding criminal evidence, that does implicate whether this is a valid inventory search.  He is just their agent. He was not going to search the car, he was coming to the precinct, they were standing by the car and they called him over. If he had been part of the first team and had popped open the console and found the gun on the first go-round, would that have been a valid inventory search? Two responses, just to make it clear. There were two searches here, so that first search he was in. I understand, but I want to make sure I understood what your position was with regard to popping open the, I mean, I guess there were some special kinds of screws in the console and Detective Breton was particularly alert to the possibility of hidden compartments. It wasn't a hidden compartment, he forced open the structure of the console. He didn't go into the storage area. That would not be a proper investigatory, that would not be a proper inventory search. In an investigatory search, we have a warrant, probable cause, you can tear a car apart. You can take off the plastic. In an investigatory search, the thing about having a standard procedure is that it's standard. Everybody is treated the same. You're not investigating based on any particularized suspicions. What Detective Breton testified is, this is his experience. He didn't testify about the policy, and the policy is in the record. It's on pages 38, the NYPD's search policy. It's on page 38 to 40, 39 to 40 of our appendix. It's the policy that the district court cites. It says you can force open a compartment only if it can be done with minimal damage, right? It says you can force open a trunk, a glove compartment. These are areas that are normal. These are never designed for storage. That's followed by et cetera. Yes, yes, this is an example, but their examples are places that are designed to be used by the owner or user of a car for storage. Not some place where some wily criminal might find to store things. You can pop off various parts of a car, lots of them made of plastic. And if you're wily and you're clever, and you're a body parts person or you're a mechanic, yes, you can do these things. But that's an investigative search based on individualized suspicions. If they had a warrant, they could do all those things. But, yes, your honor. Complete your thought, because I was going to move us on to another subject. Yes, but having a standard procedure means that you apply this to everybody. You're not looking for crimes about a particular person. You're just doing it as your routine process of safeguarding property. And you don't tear apart places in an automobile that aren't designed for use for storage by the owner or user. Yes, your honor. Can I ask you to address the evidence that your client was a member of a street gang and that he would be willing to help the NYPD to obtain guns and narcotics? because I'm having difficulty seeing why that evidence is admissible in this case. Yes, your honor. Wait, it should not have been admitted. All it does is- Was it admitted in the other trials? No, it wasn't admitted in the other trials. And also, in the other trials, the statement, the statement, the point two, is particularly significant here. Because the first two juries were able to hear the full context of his statement. They were able to hear the question and the answer. In this third trial, all they heard was the answer. They just heard a little snippet. If the whole statement had come in, what use would you have made of it at trial? What the statement does is it provides an explanation for why his confession might not be a confession. Why it might not be reliable. It gave him a motive. And it's the full context. We're just talking about just the full sentences. There's the question and the answer. And usually when you charge a jury, you tell the jury, it's the question and the answer that's the evidence. Well, they just gave the answer. And it gives the impression that they just gave him the Miranda warnings and he said, it's mine. And this, all defense counsel was permitted to do was say there's a conversation, but nothing specific. The conversation could be, do you want a cup of coffee? Do you want water? But the jury's weren't told. Well, he first claimed that he didn't know about the gun and was simply bringing the car back to his- Girlfriend. Girlfriend. Why would that be so helpful? If you got that in, then the jury would say, well, first he denied it, then he admitted it. How does that, why, even if there was a violation of the rule of completeness here, how was it harmful in this particular case? Yes, because what the officer then says, oh, it's your girlfriend's. He is saying, oh, you're blaming her, it's hers, implicating her in the crime. And then he says, no, no, no, no, it's mine, it's mine. That's when he admits to it. It's that question, oh, you're saying it's hers. No, it's mine. That is the question and answer. That is the evidence. And that's what this jury was not permitted to hear. And the first two juries were. And they hung eight to six for acquittal, the first jury, six to six, split in the second jury. But this jury wasn't allowed to exercise its truth finding function and to hear the full context of the statement to consider whether or not it was reliable. And whether it was truly a confession or just somebody covering. And your position as to the evidence that he was a member of a street gang is that that's just propensity evidence. It's just propensity evidence. The government says that it goes to knowledge. It's a propensity evidence. He's talking about in the future. Oh, it's also with that statement is that he would try to help the police in getting firearms or drugs. That's future. And him being a member of a street gang is not particular to this offense. There was a firearm found in a car. It's not necessarily means you're a gang member. It's not related. But because he's a gang member, particularly of a notorious gang called the Crips, that doesn't flame the jury's sentiments against him and make them think he's just a bad person. He's just a bad person. He needs to be off the street. It didn't go, it wasn't probative of this, the issues in this trial. And it should not have been in it. Thank you, Your Honor. Good morning, Your Honors. Tanya Hajar for the government. I'd like to address, may it please the court, I'd like to address the defendant's first claim first. The defendant's argument misapplies the law as to inventory searches. Detective Latore testified, and the magistrate judge credited the testimony, that he returned to the car because he believed he missed something of value. Whether that be contraband or something else that should have been vouched for safekeeping. This falls squarely within what the Supreme Court and this court has considered to be the proper justification for an inventory search. To account for property in a vehicle while it is lawfully in police custody. I'm finding that just difficult to accept. I mean, he went, he overheard the conversation. It testified that there were aspects of the way the conversation happened. The kind of urgency and, you know, get over here now. It's kind of statements that the defendant made that prompted him to go back down. And he, you know, they had done, several people had done a search before. So there's nothing in plain view. They were going to have to be looking for something else. There was nothing, there was no part of the car that they had failed to search. That, you know, wasn't going to be, require some further effort. It, it sounds much more like an investigation to me than looking for something that they didn't see before somehow. Can you explain why I'm wrong? They, they had missed something in the car, Judge Carney. They had missed that area of the console, which Detective Breton testified. He had searched many times before. And in his view, and which the judge credited, that was part of a standard inventory search. The fact that- Pop open panels. Yes, your honor. And, and just, just to clarify my adversary's arguments to you. It wasn't a forced, Detective Breton said it was three plastic clips. And this was testimony the judge credited, that they were easy to pop open. They required no real force nor tool. And so the idea that this is a forced open that caused damage to the car is not supported by the record. But it just was something that the prior inventory search had failed to those officers hadn't done. Yes, your honor. And importantly, what courts, what the Supreme Court has found dispositive here, in the question of bad faith or investigative purpose, is where the, the officers would have not have inventoried the car in the first instance, had they not had that motive. So for example, in Florida v. Wells, which is cited in both appellants and, and Napoli's brief. The police officer in that case testified that he asked his superior whether the car should be inventoried or impounded at all. The bad faith that courts have been concerned with in this context doesn't refer to possibly there's something left of value in the car that's squarely within what an inventory search is supposed to do. And that's what courts believe justifies the exception to the warrant requirement. What courts are concerned with in this case are cases in where law enforcement does an inventory search where it otherwise would not have in the first instance. Are there any cases where there have been repeated inventory searches? One inventory search has been completed and then another search is done. Your Honor, the magistrate, Judge Pollack, did cite to several of those cases that for the general proposition that the temporal distance between the initiation of an inventory search and the continuation or completion or second search is of no moment. I'm not sure they were factually specifically on point. There may be a doctrinal question about whether this is a search that was continued or a second search that was initiated. Yes, Judge Karras, from the government's perspective, that is of no real salience. The salience for the Supreme Court and for this court has been reasonableness and whether it comports with the justifications underlying the Fourth Amendment. This is an area that there's language that talks about motive and good faith, which some lower courts have talked about motive, it's a murky line of cases. But your argument is that it has to be reasonable if you overhear a conversation, there's something, I got the impression listening in, that there's something of value left in the car. That might be investigatory, but it's also completely reasonable to say we may have missed something and we need to keep a record of it. So there was still a valid inventory purpose being served by going back and taking a second look. Yes, Judge Livingston, that is the purpose of the inventory search exception to the warrant requirement in the first instance. And even in the context where there'd be no argument that you had probable cause to search the car for investigative purposes, there's no probable cause to search. You would still need to do that inventory search because you have a basis for thinking you may have missed something of value in the car. Which is important for many reasons, Your Honor, as you say, both to ensure that valuables are safeguarded and appropriately accounted for, and as a public safety matter, where the car is in police custody. Can I ask you to address how this evidence came in, that he was a member of the street gang? Yes, Your Honor. The statement that was introduced initially was the defendant's pure statement, I had the gun. Subsequently, the entirety of the defendant's post-dress statement came in, which we had mentioned of his membership in a gang and his access to firearms and narcotics. That full statement, Your Honors, was important to put the first statement in context. Because defense counsel argued that the statement, I had the gun, that bare statement, devoid of any context, was a statement of some kind of metaphysical fact. That the defendant didn't evince the knowledge, the defendant actually knew that the gun was in the console of the car. Whereas the statement, I had the gun, I've known members of gangs and I'm friends with them. I can work with the NYPD to obtain firearms and narcotics. That puts the statement in context and has significant probative value. That part of the statement didn't come in in the first two trials. Your Honor, the statement was not, Detective Fichter testified to those statements. That law enforcement report, he testified to it as a past recollection recorded. That law enforcement report was not provided to federal law enforcement until after the first two trials. If I just may move on to one other point, Your Honor, on defendant's claim on this. The only party to have made arguments at insummation regarding the defendant's affiliation with gang members was defense counsel, and I'd like to just point the court to that argument in summation. Which is on page 125 of the government's appendix. Defense counsel argued, again, the gun was found in the passenger side of the car. We don't know who else was in the car. Then makes reference to the government's, the photographs the government put into evidence, which it was not objected to on the basis of rule 403. And continued, but you know what, I can also suggest that there are other suspects. Just talks about the renter of the car and states, for all we know, one of these guys could have had the car or driven it or had it in their possession or were in the car at such a time and place where they could put a gun in the console. This was a tactical decision, Your Honor, not to object to the pictures. And defense counsel made active use of these arguments at trial. And it was not a fruitless defense because the DNA evidence at the trial, Your Honor, excluded the defendant as a contributor to the DNA found on the gun. And so that was a strategic choice. And I see, that was a strategic choice and so the defense has waived his objection to the admission of the Facebook photographs. And as the statement, the defendant made ample use of that evidence at trial. And could you address the district court's determination to exclude the portion of the defendant's statement that he sought to introduce? That he, where he first denies knowledge of, it's not my gun, I'm bringing the car back to my girlfriend. Yes, Judge Livingston, that's part, that's all part of the one statement to the agents, correct? It was the initial denials, Your Honor, that's correct, and then that were followed by the admission. Very short period of time, it's all one snippet of conversation. It is, Your Honor, but the law is quite clear on this, that when offered by a defendant, his own hearsay statements which don't explain the subsequent- I don't think that's right, because the rule of completeness, as we've interpreted in this circuit, you have to be able to put in the statement to complete the statement that the government has proffered. If in fairness, you need to consider both, so I don't think there's a hearsay bar. Certainly, Your Honor, if the- Both parts of the statement in order to understand what the government is proffering. As Judge Garcia held, Your Honor, the initial denial does not explain or clarify the subsequent statement. The statement, the gun wasn't mine, doesn't explain or clarify I had the gun. There is no, the rule of completeness doesn't compel the admission of that statement, because it doesn't serve to do, it's merely a denial of the subsequent statement. And so, and I'll note, Your Honor, the other- You see the irony of this argument. So the government is arguing, we need to put in, I am a gang member, or I had the gun will be interpreted in a metaphysical way to mean only, it's in my, it's around me some way, but it's not really mine. And yet the government is standing up and saying, you can't put in the first half of the statement where he suggests it's my girlfriend's. All this evidence, when the defense says, we need that part of the statement, because that shows what, when he said I had the gun, it's real meaning was he's standing up for his girlfriend. It's true, Your Honor, that the state, that when offered by the defendant, the rule of completeness, it must clarify or explain the statement. And, Your Honor, there is case law that makes clear that these initial false exculpatories, initial denials, are not among the types of statements that tend to explain or clarify subsequent statements. Particularly where the renter of the car testified at this trial that she was not, in fact, the defendant's girlfriend. The admission of that testimony would have been harmless. Thank you, Your Honors. Your Honor, they weren't going back to do any safekeeping functions the second time, because they forced open a part of the car that isn't designed to open, it isn't designed for use by an owner or anyone for storage. Isn't that a part of the car that you might look at during a regular, there's nothing in the inventory procedures that would forbid them from looking there during the first portion of the search, is there? That isn't a place for you to search. The inventory procedure identifies places that are used and designed for storage by the designer. Glove compartments, the truck, you look in the back seat around there, don't talk about destroying. That's what you do when you have a warrant, when you have probable cause. You can do those things. And they say, oh, it didn't take much. It's forced. You pulled something open that wasn't designed to open. Latoria acknowledges that. He, all the officers acknowledge that. Now, with respect to their cases where there were two searches. First, the Johnson case, in a footnote it says, footnote two, there is no contention that this was anything but an investigatory search. It doesn't help them. The Shaw case, in that case, the second officer who did the search was unsure whether the first officer had conducted the search. The second officer thought he had interrupted the first officer in his procedure and the first officer hadn't done the inventory search. Their third case, the Reyes case from the District of Georgia, in that case, the inventory search was done on one day. Several days later, they instituted forfeiture proceedings. And as part of their forfeiture proceeding, the police there did an inventory, because that's what they do when they forfeit cars. As for point three, their argument about defense counsel's summation, somehow, defense counsel's defense was crippled. Crippled by the fact the complete statement wasn't put in. Crippled by the fact that he was tarred as a gang member. The defense counsel was simply trying to make the best use of the best defense for a client whose case was crippled because they didn't put in his statement. They put in a snippet. They didn't put in the question that elicited the answer. They just put in a statement that misled the jury. Misled the jury. In the prior two trials, the full statement had been admitted, right? The full statement was admitted in the prior two trials. The jury was able to exercise their truth-finding function. And the idea that because their witness says she's not his girlfriend, that's a jury question, that's for the jurors to find. They had some kind of relationship because he's on the rental agreement. He had apparently been in an accident in a prior rental car, and he's back on the agreement. So, and now he's accused of a crime. So, yes, she distances herself from him. But that's for the jury to decide. That's not as if they say, well, she's not, so therefore, harmless. The prosecutor in this case interfered with the jury's truth-finding and fact-finding function, and that's how they got the conviction in this case. The case should be reversed in Mr. Winchester-Brenner new trial. Thank you. Thank you both. Well argued.